OPINION.

GRAUPNER: We must approve the action of the Commissioner in disallowing the claimed deduction, not on the ground that the taxpayer is precluded from changing its method of reporting the kind of expenditures which give rise to the deficiency, but for the reason that expenditures made for the development and in the acquisition of patents are properly capital expenditures. *Appeal of Gilliam Manufacturing Co.*, 1 B. T. A. 967; *Appeal of Goodell-Pratt Co.*, 3 B. T. A. 30.

APPEAL OF ESTATE OF HENRIETTA PUTNAM.

Docket No. 5273.    Submitted November 24, 1925.    Decided February 17, 1926.

*Robert C. McKay, Esq.*, for the taxpayer.
*John F. Greaney, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in estate tax in the amount of $5,155.09. The deficiency arises from the fact that the Commissioner determined that the transfer of certain stock, made by the decedent to her son in 1916, was made to take effect in possession or enjoyment at or after death.

FINDINGS OF FACT.

Decedent died November 15, 1921, a resident of Worcester, Mass. The decedent on February 17, 1916, gave 50 shares of stock in Tiffany & Co. to her son, Charles E. Putnam, who was her only child. On the same date the stock was transferred on the books of the corporation to Charles E. Putnam. This stock was acquired by the decedent on May 22, 1915, by bequest from her brother, under a will which provided that in the event of her death prior to the death of her brother the property should go to her son. From the time she received it until she transferred it to her son as aforesaid she gave her son one-half of the income from the said stock. From the time he received the said stock from his mother he gave her one-half of the income therefrom. There was no agreement, either oral or written, or any understanding between the decedent and her son when she transferred the stock to him that he would give her any part of the income therefrom, and there was no agreement on his part to do so. At the time when the decedent received the stock she desired that her son have it, but it was not turned over to him until she transferred it on the date aforesaid.

The decedent made a gift to her son of the stock involved on February 17, 1916, which was accepted *in praesenti*, and the gift was not to take effect at or after her death.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

---

## APPEAL OF AMERICAN BOX CO.

Docket No. 5418.   Submitted December 2, 1925.   Decided February 17, 1926.

Corporations *held* affiliated.

*Henry J. Richardson, Esq.*, for the taxpayer.
*Percy S. Crewe, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

Taxpayer appeals from the determination of a deficiency of $4,955.93, income and profits tax for the fiscal year ended May 31, 1920, and alleges as error the refusal of the Commissioner to consolidate the net income and invested capital of the taxpayer and the American Veneer Co., claimed to be affiliated corporations.

### FINDINGS OF FACT.

The taxpayer is a corporation organized and existing under the laws of the State of Ohio, with its principal office at Cleveland. During the year in question it was engaged in the manufacture of wooden packing cases.

The American Veneer Co. is a corporation organized under the laws of the State of Alabama in 1916 for the purpose of manufacturing lumber for use in the manufacture of wooden packing cases, and during the year in question was engaged in such business.

It was organized by F. H. Rose, the secretary of the taxpayer, pursuant to a resolution adopted at a meeting of the directors of the taxpayer held May 2, 1916, which resolution authorized the secretary to incorporate such a company and subscribe for $20,000 of its capital stock on behalf of the taxpayer. The same resolution authorized F. H. Rose to subscribe for $5,000 of the capital stock in his own name.

Upon its organization it issued 250 shares of its capital stock, 198 to the taxpayer, 50 to F. H. Rose, and the remaining two shares to qualify directors.

In 1917, 60 additional shares were issued. During the year in question in this proceeding the outstanding shares of the capital